# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **MADELYN L. BLEVINS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:10CV00054 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF SOCIAL** | ) | United States District Judge |
| **SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Gregory Herrell, Arrington, Schelin & Herrell, P.C., Bristol, Virginia, for Plaintiff; Nora Koch, Acting Regional Chief Counsel, Region III, Thomas Buchanan, Assistant Regional Counsel, and Alexander L. Cristaudo, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I sustain the objections to the Report and Recommendation issued by the magistrate judge and affirm the final decision of the Commissioner.

I

Plaintiff Madelyn L. Blevins filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding that she was not

eligible for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C.A. §§ 401-433 (West 2011).

Blevins filed the present application for DIB on November 18, 2005, alleging disability as of January 31, 2002,[1] due to fibromyalgia, memory loss, lack of concentration, fatigue, depression, panic attacks, headaches, carpal tunnel syndrome and osteoarthritis. The claim was denied initially and upon reconsideration. A hearing was held before an administrative law judge ("ALJ") on September 11, 2007, at which Blevins and a vocational expert testified.

By decision dated October 26, 2007, the ALJ denied Blevins' claim, finding that although she suffered from certain severe impairments, she did not have an impairment or combination of impairments that met or medically equaled listing impairments.[2] The ALJ found that Blevins had the residual functional capacity ("RFC") to perform light work requiring no more than occasional climbing, balancing, stooping, kneeling, crouching, and crawling, and that required only minimal interaction with the general public. Based on Blevins' individual characteristics, her RFC and the testimony of the vocational expert, the ALJ found

_____

[1] Blevins filed a previous application for DIB in 2002, alleging disability due to fibromyalgia and chronic fatigue syndrome. Ultimately, those claims were denied by the Commissioner and that denial was upheld by this court. *Blevins v. Barnhart*, No. 1:05cv00103, 2006 WL 2527434 (W.D. Va. Sept. 1, 2006). Once her first claim for DIB was denied, she amended her alleged onset date in this application to April 2, 2005, the day after her first claim was denied by the ALJ.

[2] The ALJ found the following severe impairments: fibromyalgia, bilateral carpal tunnel syndrome, migraines, depression, and anxiety.

Case 1:10-cv-00054-JPJ-PMS   Document 28   Filed 03/28/12   Page 2 of 20   Pageid#: 718

that jobs existed in significant numbers in the national economy that Blevins could perform. Thus, the ALJ concluded she was not under a disability as defined by the Act and was not eligible for benefits.

Blevins appealed administratively and her appeal was denied by the Social Security Administration's Appeals Council. She then filed her Complaint with this court.

The case was referred to the magistrate judge for determination pursuant to 28 U.S.C.A. § 636(b)(1)(B) (West 2006 & Supp. 2011). The parties filed cross motions for summary judgment. As directed by the order of referral, the magistrate judge submitted a Report and Recommendation ("R&R"), finding that the Commissioner's decision was not supported by substantial evidence and recommending that the Commissioner's decision be vacated and the case remanded for further development.

The Commissioner timely objected to the magistrate judge's R&R and Blevins has filed a response. The case is thus ripe for decision.

II

Under Federal Rule of Civil Procedure 72(b)(3), I must determine de novo those parts of the magistrate judge's R&R that have been objected to. Fed. R. Civ. P. 72(b)(3).[3]

Blevins was born in 1955 and was, at the time of the ALJ's decision, a "person closely approaching advanced age" under the relevant regulations. *See* 20 C.F.R. § 404.1563(d) (2011). She has a college education and past relevant work experience as an incident manager, a technical support analyst, and a computer specialist.

From August 1997 through October 2002, Blevins received sporadic treatment for depression from Bristol Psychiatry & Psychology Services. Treatment notes show that her symptoms improved with medication.

On November 4, 2004, Gerard Murphy, M.D., diagnosed Blevins with fibromyalgia and depression. In January 2005, Blevins reported being more depressed. By October 2005, Blevins reported some stabilization of her depression with medication. In February 2006, Blevins again reported an increase in her depressive symptoms. In January 2007, Blevins stated she was doing fairly well. In September 2007, Dr. Murphy noted that Blevins was in good spirits but still had

---

[3] Blevins raised other arguments as to the ALJ's decision, which were rejected by the magistrate judge. Blevins has not filed objections to the R&R and I accept the magistrate judge's determination as to Blevins' other contentions.

-4-

a lot of anxiety.  In October 2007, Blevins complained of nausea and memory and concentration problems.  She stated that she believed someone was watching her.  Her affect was full and her mood was depressed and anxious.  Her insight and memory were fair and intact.  Dr. Murphy diagnosed mood disorder secondary to fibromyalgia, cognitive disorder, not otherwise specified, migraine headaches, and rule out Alzheimer's disorder.  In December 2007, Blevins informed Dr. Murphy that her disability had been denied and her attorney was going to appeal the decision and that she was "going to use more of her psychiatric disease" to pursue her benefits.  (R. at 457.)  Throughout 2009, Dr. Murphy's treatment notes do not indicate any problems with depression or anxiety.  In January 2010, Dr. Murphy noted that Blevins was "stable on her current Effexor."  (R. at 495.)

On March 2, 2006, Maria C. Abeleda, M.D., a psychiatrist, evaluated Blevins.  Dr. Abeleda reported that Blevins affect was full and her mood was slightly depressed and anxious.  Her memory and judgment were intact.  Dr. Abeleda diagnosed a mood disorder secondary to fibromyalgia.  She assessed Blevins' Global Assessment of Functioning ("GAF") score at 60, indicating moderate symptoms.  In July 2006, Blevins reported she was somewhat better on her medication and was less depressed.  Dr. Abeleda noted that Blevins' insight was good and that her memory and judgment were intact.  She again diagnosed Blevins' mood disorder as secondary to her fibromyalgia.  In June 2007, Blevins

reported that she was doing fairly well but continued to report memory problems. Her affect was full and her mood was dull and slightly depressed. Her memory was adequate and judgment intact. Dr. Abeleda diagnosed cognitive disorder, not otherwise specified, mood disorder secondary to fibromyalgia, migraine headaches, and the need to rule out Alzheimer's disorder. Throughout these appointments, she repeatedly denied hallucinations or paranoia.

In August 2007, Blevins reported she was not doing well. She stated she was having nightmares and had two hallucinations. She denied any suspiciousness, paranoia, suicidal or homicidal ideation. Dr. Abedela noted that Blevins was casually groomed, had good hygiene and was pleasant and amiable. Her affect was full and mood was down at first and anxious. She was coherent and goal directed, with no psychotic thinking. She was well-oriented with no pressured speech or flight of ideas. Her associations were intact, her insight was fair and her memory and judgment were intact. Dr. Abeleda's diagnoses remained the same as previously noted and she actually decreased Blevins' dose of Effexor slightly. She offered Blevins medication (tranquilizers) for her panic attacks, but Blevins declined.

On the same day as this appointment occurred, Dr. Abeleda completed a mental assessment indicating that Blevins had a seriously limited ability to follow work rules, to relate to co-workers, to use judgment, to interact with supervisors, to

function independently, to maintain personal appearance and to demonstrate reliability. She stated that Blevins had no useful ability to deal with the public, to deal with work stresses, to maintain attention and concentration, to understand, remember and carry out complex, detailed and simple instructions, to behave in an emotionally stable manner and to relate predictably in social situations. She concluded that Blevins would be absent from work more than two days per month.

In August 2009, Blevins told Dr. Abeleda that she was doing fairly well. The bulk of her complaints related to fibromyalgia. She said she wanted to continue her medications and not change any doses. Dr. Abeleda observed that her mood was dysthymic and mildly depressed and there was no psychotic thinking. In November 2009, Dr. Abeleda reported that Blevins was well-engaged and had good eye contact and her memory and judgment were intact. Dr. Abeleda noted that she was mildly depressed and there was no psychosis.

On March 14, 2006, Kathy J. Miller, M.Ed., a licensed psychological examiner, evaluated Blevins.[4] Miller concluded that Blevins was mildly depressed and diagnosed dysthymic disorder, late onset, mild with medication, and mild problems with concentration and memory. She assessed a GAF score at 65, indicating mild symptoms and difficulty functioning. Miller stated that Blevins appeared to be functioning at a fairly stable level and had had no decompensation

---

[4] Miller's report is also signed by Robert S. Spangler, Ed.D., a psychologist who later performed a consultative examination of Blevins upon the request of her attorney.

episodes requiring hospitalization. Miller noted Blevins had a fairly normal daily routine, socialized with her friends by telephone and in person and enjoyed going out with groups of people.

Miller reported that Blevins had mild problems with short-term recall but that her ability to understand was not significantly limited. Miller opined that Blevins' ability to sustain concentration and persistence was mildly limited and her ability for social interaction was limited by problems functioning in crowded areas but that one-on-one interaction was not significantly limited.

In March 2006, Donald Williams, M.D., a state agency physician, reviewed Blevins' record and concluded that Blevins had the RFC to perform light work. He noted a specific limitation as to her ability to push and/or pull with her upper extremities in that he opined "No repetition due to [carpal tunnel syndrome]." (R. at 215.)

Also in March 2006, Richard J. Milan, Jr., Ph.D., a state agency psychologist, completed a mental assessment and concluded that Blevins was moderately limited in her ability to interact with the general public. He also found that she suffered from an affective disorder. He concluded she had no restriction on activities of daily living, moderate limitations on her ability to maintain social functioning, and mild limitations on her ability to maintain concentration, persistence and pace. She had not experienced any episodes of decompensation.

Blevins received mental health counseling from Mount Rogers Community Services Board from February 2005 through April 2009. Although at times her condition was observed to be deteriorating and she had impaired concentration, memory impairment and intrusive thoughts, overall counselors found her appearance and behavior to be generally unremarkable. Blevins continued to complain of depression but her counselors noted her improvement and encouraged her to recognize it.

In October 2006, William Humphries, M.D., examined Blevins at the request of the state agency. Although his examination focused on her physical impairments, he noted that she related well and was alert, fully oriented and cooperative. Her speech was intelligible and sustained, her thought and idea content were normal and her affect and grooming were appropriate.

In November 2006, E. Hugh Tenison, Ph.D., a state agency psychologist, concluded that Blevins suffered from a nonsevere affective disorder. He opined that she had a mild restriction on her ability to perform daily living activities, mild difficulties in maintaining social functioning and concentration, persistence and pace, and had not experienced any episodes of decompensation.

In March 2007, John W. Ludgate, Ph.D., a licensed clinical psychologist, evaluated Blevins at the request of her attorney. He administered the Beck Depression Inventory, which showed that she suffered from severe depression. He

administered the Beck Anxiety Inventory, which showed moderate anxiety. He diagnosed major depression, generalized anxiety disorder and panic disorder and saw no evidence of malingering. He concluded she was unable to work due to a combination of pain, restrictions in activities and emotional problems and felt that her problems would make it very difficult, if not impossible, for her to keep a job. He also completed a mental assessment which indicated that Blevins had limited, but satisfactory, ability to follow work rules, function independently, understand, remember and carry out simple instructions, and to maintain personal appearance. He opined that she had a seriously limited ability to relate to co-workers, use judgment, interact with supervisors, deal with work stresses, understand, remember and carry out detailed instructions, relate predictably in social situations and demonstrate reliability. He reported she had no useful ability to deal with the public, maintain attention and concentration, understand, remember and carry out complex instructions and behave in an emotionally stable manner. Finally, he concluded she would miss more than two days of work per month.

In March 2007, Earl K. Wilson, M.D., a neurologist, examined Blevins regarding her complaints of memory and concentration problems. He concluded that she had "more of a problem of distraction and not really a problem of memory." (R. at 337.) He felt that her memory problem was a result of depression.

In August 2007, Robert S. Spangler, Ed.D., a licensed psychologist, evaluated Blevins at the request of her attorney.[5] Blevins told him that she had been diagnosed with early Alzheimer's disease and that she cried daily and had fleeting suicidal ideation. Dr. Spangler observed her mood as depressed and anxious. He also observed that she had erratic concentration. Blevins denied hallucinations but did state that she had seen the grim reaper when she was having a panic attack. Dr. Spangler concluded that Blevins lacked the judgment to handle her own financial affairs, due to her memory problems and erratic concentration. He diagnosed recurrent, severe major depressive disorder with visual hallucinations and a moderate panic disorder, without agoraphobia.[6] He assessed a GAF score of 50, indicating serious symptoms and impairment. He also completed a mental assessment. Although he found that she had fair to good ability to make most occupational adjustments, he concluded that her ability to deal with work related stresses was poor/none and her ability to maintain attention/concentration was poor to fair. He found that she had poor to no ability to follow complex or detailed instructions but had fair ability to follow simple job instructions. Finally,

_____

[5] As noted above, this is the same psychologist who also signed Miller's 2006 report. The two reports occurred over a year apart. The evidence as a whole indicates that 2007, and particularly the summer of 2007, saw an increase in Blevins' symptoms of depression and anxiety. It is, therefore, not surprising that Dr. Spangler's report reflects a more serious diagnosis than Miller's.

[6] Dr. Spangler also conducted several tests of intelligence and achievement which indicated average intelligence, although the results were partially compromised by her lack of concentration.

he found she had poor to fair ability to behave in an emotionally stable manner and related predictably in social situations and poor to no ability to demonstrate reliability. He also felt she would be absent more than two days per month.

At the hearing, the ALJ posed a hypothetical to the vocational expert of a person with Blevins' age, education and past work experience with an RFC of light exertional work activity, including a restriction of "no continuous repetitive pushing or pulling with the upper extremities." (R. at 579.) The RFC also included a restriction of minimal interaction with the public. Based on that hypothetical, the vocational expert opined that the individual would be able to perform types of jobs existing in significant numbers in the national economy. When the hypothetical was altered to reflect the limitations in Drs. Abeleda, Ludgate and Spangler's reports, the vocational expert found that such limitations would preclude all work.

## III

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976). It is not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, the court's de novo review of the magistrate judge's conclusions takes place within the context of the deferential standard governing an Article III court's review of an agency decision.

In a social security disability case, the plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A) (West 2003 & Supp. 2011).

In assessing DIB claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has

worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. § 404.1520(a)(4) (2011). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id*. The fourth and fifth steps of the inquiry require an assessment of the claimant's RFC, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.*; *Johnson v. Barnhart*, 434 F.3d 650, 653-54 (4th Cir. 2005).

The magistrate judge found that the Commissioner's decision was not supported by substantial evidence for two reasons. First, she found that the ALJ erroneously rejected the opinions of Drs. Ludgate, Spangler and Abeleda. In so finding, the magistrate judge, in contrast to the ALJ, found that those opinions were consistent with the other psychological evidence of the record and thus should have been accorded more significant weight. Again, the court's review of the ALJ's decision is limited to assessing whether it is supported by substantial evidence and whether the ALJ applied the correct law. It is the ALJ's duty, and not that of the court, to make findings of fact and to resolve conflicts in the evidence. *See King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979).

The ALJ carefully reviewed and considered the psychological evidence in this case. In finding that Blevins suffered from the severe impairments of depression and anxiety, he specifically relied upon the opinions of Drs. Ludgate, Spangler and Abeleda. However, in determining the extent to which these impairments limited her ability to function, the ALJ accorded those opinions very little weight. As to Drs. Ludgate and Spangler, the ALJ explained his decision to accord their opinions very little weight by noting that they were attorney-referred evaluations, their opinions were based solely on Blevins' subjective allegations, and that their opinions were inconsistent with the preponderance of the psychiatric evidence and other evidence. He noted that while the opinion of a treating psychologist concerning the nature and severity of an impairment is entitled to appropriate consideration, it must be well-supported and not internally inconsistent or inconsistent with other pertinent clinical evidence. Further, he explained that speculation as to employability, such as that contained in the opinions of both Drs. Ludgate and Spangler, carries no valuable probative weight.

The ALJ's conclusions and reasoning are well-supported. He did not completely reject the opinions of Drs. Ludgate and Spangler. Concurring in part with their diagnoses, he found Blevins' depression and anxiety constituted severe impairments. Contrary to Blevins' argument, there is no indication that the ALJ had decided in advance to accord the opinions no weight or that he ended his

analysis with his conclusion that they were attorney-referred opinions. The fact that there was no treatment relationship between the doctors and Blevins was one factor he considered. Under the regulations, he was entitled to accord less weight to their opinions in determining Blevins' RFC because they were single encounters conducted for the purpose of evaluating her for disability and not part of a long-term treating relationship. *See* 20 C.F.R. § 404.1527(d)(2) (2011).

The ALJ's conclusion that the extreme limitations in their opinions were based primarily on Blevins' subjective complaints is also supported by the evidence. For example, Dr. Spangler's conclusion that Blevins did not have the capability to handle her financial affairs was based in part upon her statements to him about her alleged Alzheimer's disease, a diagnosis that does not appear in the record. Blevins argues that both doctors administered tests to her and their opinions were based, in part, on the results of those tests. The tests administered by Dr. Ludgate supported his diagnoses of serious depression and anxiety. The ALJ took these diagnoses into account when assessing whether Blevins was severely impaired by her mental disorders and when incorporating those diagnoses into his RFC determination. The tests administered by Dr. Spangler assessed her at average intelligence and with moderate visual-motor skills. These conclusions do not conflict with the ALJ's RFC determination.

Further, the severe limitations of Drs. Ludgate and Spangler's opinions simply are not adequately supported by the total objective evidence in the record. Although it is clear that Blevins suffers from depression and anxiety and that these disorders have, at times, affected her more strongly than others, overall her presentation and functionality seems to be basically normal. This fact is reflected in the treatment notes of Dr. Abeleda and of the counseling staff at Mount Rogers and in the notes of Drs. Murphy and Miller.[7]

Finally, Drs. Ludgate and Spangler's opinions regarding Blevins inability to be gainfully employed was not entitled to any deference by the ALJ. An ultimate opinion of disability is not a medical opinion, but rather an administrative decision on an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(1) (2011). Substantial evidence supports the ALJ's conclusion that the opinions of Drs. Ludgate and Spangler are not consistent with the preponderance of the evidence and therefore entitled to little weight.

As to Dr. Abeleda, the ALJ explained that he gave her opinion very little weight because it was inconsistent with her own treatment notes and with the preponderance of the evidence. He noted that Dr. Abeleda's mental status examination in August 2007 was normal and that Blevins declined medication for

---

[7] It should be noted that the treatment notes of Drs. Murphy and Abeleda, Blevins' long-term treatment providers, chronicle a marked improvement in her symptoms of depression and anxiety post-2007 and particularly into 2009.

her panic attacks. Overall, Dr. Abeleda's treatment notes simply do not support the extreme limitations of her report. She consistently observed that Blevins was coherent and goal-directed, well-engaged, well-oriented, and had good eye contact. Her affect was generally full, her memory and judgment were intact and there was no evidence of psychotic thinking. Despite her grim report, Dr. Abeleda did not substantially change her treatment or medication of Blevins, nor did she recommend that Blevins be hospitalized. In addition, each of the state agency psychologists concluded that Blevins' suffered from only mild to moderate limitations on her abilities. The ALJ's decision to accord Dr. Abeleda's opinion little weight was supported by the evidence and cannot be re-weighed by this court. *See Johnson*, 434 F.3d at 653 ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]" (internal quotation marks and citation omitted).

The magistrate judge also found that the ALJ's decision was not supported by substantial evidence because she found that the ALJ failed to include a restriction on "repetitive movements" in his hypotheticals to the vocational expert. The magistrate judge concluded that such a restriction was required because of the opinion of Dr. Williams, which the magistrate judge interpreted as requiring a specific restriction on "repetitive movements." However, Dr. Williams' restriction was specifically related to pushing and/or pulling with the upper extremities. He

noted a specific limitation as to her ability to push and/or pull with her upper extremities in that he opined "No repetition due to [carpal tunnel syndrome]." (R. at 215.) It is a reasonable reading of his words that Blevins is restricted from repetitive pushing and/or pulling with the upper extremities. The ALJ included just such a restriction in his light work hypothetical to the vocational expert and it was based on that hypothetical, with the restriction, that the vocational expert opined that she could perform work existing in significant levels in the national economy. It is true that the ALJ did not recite this specific restriction in the RFC assessment in his decision. However, his determination that Blevins was not disabled was based upon the evidence before him, including the testimony of the vocational expert in response to his hypothetical, which included the restriction on repetitive pushing and pulling. It is not necessary to remand the case to the ALJ for clarification since the record is clear.


IV

For these reasons, the defendant's Objections to the R&R will be sustained and the magistrate judge's recommendation will not be accepted. The plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

-19-

DATED:   March 28, 2012

/s/  James P. Jones
United States District Judge